UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| HANIT OHAION, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:21-cv-02198-GMN-BNW |
| vs. ) | |
| ) | **ORDER** |
| BANK OF AMERICA, N.A., ) | |
| ) | |
| Defendant. ) | |

Pending before the Court is the Motion to Dismiss, (ECF No. 18), filed by Defendant Bank of America, N.A. ("Defendant"). Plaintiff Hanit Ohaion ("Plaintiff") filed a Response, (ECF No. 19), to which Defendant filed a Reply, (ECF No. 22). For the reasons discussed below, Defendant's Motion to Dismiss is **GRANTED**.

**I.     BACKGROUND**

This action arises from a dispute regarding the accuracy of information reported on Plaintiff's credit report. (*See generally* Compl., ECF No. 1). Specifically, Plaintiff alleges that Defendant furnished inaccurate information to a consumer reporting agency[1] when Defendant reflected the current payment status of Plaintiff's credit account with Defendant as "charged off"[2] even though Plaintiff paid and closed this account and no longer had any obligation to pay Defendant. (*Id.* ¶¶ 12–14). Plaintiff further alleges that she disputed the information on her consumer report, but Defendant failed to reasonably investigate her dispute. (*Id.* ¶¶ 19–22). Based on these allegations, Plaintiff brought two causes of action against Defendant under the

---

[1] The consumer reporting agency is Equifax Information Services, LLC. (Compl. ¶ 6). Plaintiff originally named Equifax as a Defendant in this action as well, but Plaintiff dismissed her claims against Equifax. (*See* Order Granting Stipulation, ECF No. 27).

[2] "'Charge off' is a term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Makela v. Experian Info. Solutions, Inc.*, No. 6:21-cv-00386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) (citing *Charge Off*, Black's Law Dictionary (11th ed. 2019)).

Fair Credit Reporting Act ("FCRA"): one for willful violation of the FCRA and one for negligent violation of the FCRA. (*Id.* ¶¶ 42–62). Defendant now seeks to dismiss Plaintiff's Complaint. (*See generally* Mot. Dismiss, ECF No. 18).

## II. LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279,

1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

In the instant Motion, Defendant argues that dismissal is proper because Plaintiff lacks Article III standing. (Mot. Dismiss 8:1–9:24, ECF No. 18). Additionally, Defendant avers that Plaintiff's claims fail as a matter of law because Defendant's reporting was accurate. (*Id.* 4:13–7:23). Conversely, Plaintiff asserts that she alleged an injury-in-fact sufficient for Article III standing and alleged cognizable FCRA claims. (*See generally* Resp., ECF No. 19). The Court will evaluate each argument in turn.

#### A. Article III Standing

"The irreducible constitutional minimum of standing" is comprised of three elements: (1) The plaintiff must have suffered an "injury-in-fact," which is a "concrete and particularized" invasion of a legally protected interest; (2) there must be a "causal connection" between the plaintiff's injury and the defendant's action; and (3) it must be "likely" that the plaintiff's injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561.

The Supreme Court evaluated the "injury-in-fact" requirement pursuant to an alleged violation of the FCRA in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). In *Spokeo*, the plaintiff alleged that the defendant inaccurately reported certain information about the plaintiff. 578 U.S. at 333. The Supreme Court determined that a violation of the FCRA alone is insufficient to establish an injury-in-fact. *Id.* at 342. A plaintiff alleging an FCRA violation must demonstrate that the violation caused harm or presented a material risk of harm. *Id.* The Supreme Court illustrated this rule with two examples of FCRA violations that may not give rise to Article III standing: (1) a mere violation of the FCRA's procedural requirements, such as if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information but the information is entirely accurate; and (2) a violation of the FCRA's mandate to not report inaccuracies when the alleged inaccuracies do not cause harm or present any material risk of harm, such as the inaccurate reporting of a plaintiff's zip code. *Id.*

The Court ultimately remanded the case to the Ninth Circuit without deciding whether the alleged infractions were sufficiently concrete. *Id.* On remand, the Ninth Circuit determined that the plaintiff sufficiently alleged a concrete injury by asserting that the defendant "caused actual harm to [his] employment prospects by misrepresenting facts that would be relevant to employers, and that he suffers from anxiety, stress, concern, and/or worry about his diminished employment prospects as a result" of the defendant's inaccurate reporting. *Robins v. Spokeo, Inc.*, 867 F.3d 1108, 1117 (9th Cir. 2017) (internal quotations omitted).

Here, Plaintiff alleges that Defendant inaccurately reported the payment status of her account as "charged off." (Compl. ¶ 12). As a result of the alleged inaccurate reporting, Plaintiff claims that she "suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation and embarrassment of credit denial." (*Id.* ¶ 27). Based on these allegations, inaccurately reporting an account as "charged off" is

"substantially more likely" to cause concrete injury than the incorrect zip code example provided by the Supreme Court. *See Robins*, 867 F. 3d at 1117. Further, the Court finds that Plaintiff sufficiently alleges an injury that affects Plaintiff in a "personal and individual way." *See Spokeo*, 578 U.S. at 339. Therefore, Plaintiff has met her burden of establishing an injury-in-fact that is concrete and particularized based on the harm alleged. *See Harris v. Nissan–Infiniti LT*, No. 2:17–cv–191–JCM–VCF, 2018 WL 387397, at *4 (D. Nev. Jan. 11, 2018) (holding that plaintiff who allegedly suffered credit denials, fear of credit denials, out of pocket expenses and emotional distress plead concrete injury sufficient to satisfy Article III's injury-in-fact requirement). Having found that Plaintiff has Article III standing, the Court next evaluates the facial plausibility of Plaintiff's claims under the FCRA.

### B. FCRA Claims

Congress adopted the FCRA to ensure that information furnishers and credit reporting agencies "exercise their grave responsibilities" through adopting "reasonable procedures" that ensure that a consumer's report is accurate. *See* 15 U.S.C. § 1681. To sustain a valid FCRA claim against a furnisher, the plaintiff must allege: (1) that the furnisher provided inaccurate information to the credit reporting agency; (2) that the credit reporting agency notified the furnisher of the dispute; and (3) that the furnisher failed to conduct a reasonable investigation into the disputed information. *Harris*, 2018 WL 387397, at *2 (citing *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009)).

The threshold question in a FCRA claim against a furnisher is whether the plaintiff alleged that the furnisher provided inaccurate information to the credit reporting agency. *See Abeyta v. Bank of Am.*, No. 2:15-cv-02320-RCJ-NJK, 2016 WL 1298109, at *2 (D. Nev. Mar. 31, 2016) (dismissing complaint when "[n]o allegation of actual falsity [had] been made"). But technically correct information may still be considered inaccurate for purposes of the FCRA: "An item on a credit report can be inaccurate 'because it is patently incorrect, or because it is

[materially] misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.'" *Florence v. Cenlar Fed. Savings & Loan et al.*, No. 2:16–cv–0587–GMN–NJK, 2018 WL 1145804, at *4 (D. Nev. Mar. 1, 2018) (citing *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 890 (9th Cir. 2010)).

The allegedly inaccurate credit report item at issue here is a "charge off," which is "a term of art for credit providers, understood as writing off a debt as a loss because payment is unlikely." *Makela v. Experian Info. Solutions, Inc.*, No. 6:21-cv-00386-MC, 2021 WL 5149699, at *3 (D. Or. Nov. 4, 2021) (citing *Charge Off*, Black's Law Dictionary (11th ed. 2019)). A creditor charges off a debt when it "no longer considers the account balance an asset for accounting purposes." *Christian v. Equifax Info. Servs., LLC*, No. 18-13682, 2020 WL 2087869, at *4 (E.D. Mich. Apr. 30, 2020). "Banks are in fact required under Federal Regulations to charge off debt that is past due by over 180 days." *Artemov v. TransUnion, LLC*, No. 20-cv-1892 (BMC), 2020 WL 5211068, at *3 (E.D.N.Y. Sept. 1, 2020).

"But charging off a debt does not diminish the legal right of the original creditor to collect the full amount of the debt." *Butnick v. Experian Info. Sols., Inc.*, No. 20:cv-1631-PKC-RLM, 2021 WL 395808, at *4 (E.D.N.Y. Feb. 4, 2021) (internal quotation marks omitted). "Any other conclusion would be illogical; it would simply encourage a consumer to take out massive amounts of debt and wait around six months for it to be wiped away." *Artemov*, 2020 WL 5211068, at *4. Moreover, when "a debt which has been charged off by the creditor and is later settled for an amount less than the original balance due," the account retains the derogatory reference of "charged off" because "[t]his information, which reflects the efforts required to collect a debt, is clearly of interest to potential creditors and would be effectively hidden by a credit report that treated the account as being in good standing." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991).

///

### 1. Actual Falsity

Defendant argues that Plaintiff fails to state a claim because Defendant's reporting of Plaintiff's account as "charged off" was accurate. (Mot. Dismiss 4:13–7:23). Plaintiff responds that the "information was inaccurate because the payment status field indicates that the account is currently in a 'charge off' status despite the fact that it had been closed and paid to the satisfaction of the lender with a $0 balance." (Resp. 3:7–9). Plaintiff relies heavily on the Eleventh Circuit decision in *Cahlin* and asserts that "*Cahlin* stands for the proposition that past derogatory information should remain on the credit report, *but only with reference to the payment history section*." (Resp. 7:14–15) (emphasis added).

In *Cahlin*, the derogatory information was an "I9" rating, which "signifies that the account has been charged off or is a bad debt." 936 F.2d at 1155. Like the Defendant in this case, the defendants in *Cahlin* continued to report the account as charged off even after the plaintiff settled the debt for an amount less than the full balance due.[3] *Id.* at 1158. The Eleventh Circuit affirmed the grant of summary judgment in favor of defendants because the plaintiff failed to show that the defendants had reported any "inaccurate" information. *Id.* at 1154. Specifically, the Eleventh Circuit concluded that the plaintiff's account, "even if reported today, might be reported as an 'I9' with a zero balance." *Id.* 1159.

Upon review of the *Cahlin* opinion, it appears that this case actually supports Defendant's position, not Plaintiff's. Indeed, Plaintiff's Equifax Report, which Plaintiff included as an exhibit to her Response, indicates that the status of the account in question is charged off and the balance of the account is zero—the very reporting that *Cahlin* determined is accurate for an account that was charged off and later settled. (*See* Equifax Report at 4, Ex. A

---

[3] The Complaint does not allege when Plaintiff paid off her account or whether she settled the debt for less than the amount due. (*See generally* Compl.). Defendant asserts that Plaintiff settled her debt for less than the amount due after the debt was charged off. (*See* Mot. Dismiss 7:7–10). Plaintiff does not dispute Defendant's assertion, but states more vaguely that her account "had been closed and paid to the satisfaction of the lender with a $0 balance." (Resp. 3:7–9).

to Resp., ECF No. 19-1).[4]  The Court disagrees that *Cahlin* recognized that any notation regarding the charge-off must be relegated to the payment history section.  Accordingly, the Court finds that Defendant's reporting was, technically speaking, accurate.

### 2. Materially Misleading

Even if a furnisher's reporting is technically accurate, information may nonetheless be inaccurate for purposes of the FCRA if it is "materially misleading." *See Florence*, 2018 WL 1145804, at *4.  Plaintiff argues that continuing to report her account as charged off is materially misleading under the FCRA.[5]  (Resp. 4:22–23).  Plaintiff again relies on nonbinding authority to support her argument.  In *Koropoulos v. Credit Bureau, Inc.*, the defendant reported the plaintiff's loan as having a current status of "I9" with a "0" balance. 734 F.2d 37, 38 (D.C. Cir. 1984).  The D.C. Circuit concluded that dismissal of the plaintiff's FCRA claims "by summary judgment on the grounds that the information in the report was technically accurate . . . was improper" because a genuine issue of fact remained "as to whether the report was sufficiently misleading." *Id.* at 42.  Specifically, the D.C. Circuit noted that the report could be found to be misleading because the plaintiff repaid the debt in full and the defendant did not suffer a total loss. *Id.*

The Ninth Circuit has not adopted *Koropoulos*. *See Shaw v. Experian Info. Solutions, Inc.*, 891 F.3d 749, 757 n.4 (9th Cir. 2018) ("Far from adopting [*Koropoulos*] in full, we have quoted it parenthetically only a handful of times, and only in support of the unremarkable definition of 'inaccurate.'").  In the Ninth Circuit, "incomplete or inaccurate" items within the meaning of the FCRA's furnisher investigation provision includes technically accurate information that is "misleading in such a way and to such an extent that it can be expected to

---

[4] The Court considers the Equifax Report in the Motion to Dismiss stage under the doctrine of incorporation by reference because the Complaint "necessarily relies" on the Report and the Report's authenticity and its relevance is not disputed. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

[5] Defendant's Reply does not address Plaintiff's argument that Defendant's reporting was materially misleading. (*See generally* Reply, ECF No. 22).

adversely affect credit decisions." *Carvalho*, 629 F.3d at 890 (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009)).

Plaintiff argues that "[r]eporting the current status of the account as a "charge off" despite the fact that it had been satisfied is materially misleading because it makes it appear as though Plaintiff is less creditworthy than she really is." (Resp. 8:7–9). But Plaintiff offers no legal citation other than *Koropoulos* supporting the proposition that continuing to accurately report an account as charged off after the debtor has paid is misleading to the extent that it can be expected to adversely affect credit decisions.[6]

Lastly, Plaintiff argues that the "algorithms that generate credit scores interpret the 'payment status' section as a current status, thus nullifying the effect that the credit report, viewed as a whole, may have on the account status section." (Resp. 15:23–16:2) (internal citation omitted). Although the Complaint alleges that this aspect of the credit scoring algorithms would cause a lower credit score to be generated for a charged off account status than a closed account status, (*see* Compl. ¶ 15), Plaintiff fails to allege how this fact is misleading. Indeed, Plaintiff cites to case law that suggests a charged off account, even one that has been paid off, *should* retain derogatory remarks. *See Cahlin*, 936 F.2d at 1158. The Court concludes that the accurate reporting of a charged off account is not misleading.

In sum, nowhere in her Complaint or her Response to the instant Motion does Plaintiff articulate what, exactly, Defendant reported inaccurately. Because it is not inaccurate to continue to report an account as charged off after a debtor settled the account for less than the full balance, Plaintiff must allege some other fact demonstrating how Defendant's reporting was inaccurate, or how Defendant's reporting was so misleading that it should be considered

---

[6] Plaintiff additionally cites to non-binding case law on the tangentially related topic of pay status claims. (*See* Resp. 8:6– 11:3). The Court does not find these cases persuasive or relevant because, unlike a previously delinquent account that is no longer delinquent because the debtor paid, a charged off account remains charged off even after the debtor pays. *Compare Barrow v. Trans Union, LLC*, No. 20-cv-3628, 2021 WL 1424681, at *1 (E.D. Pa. Apr. 13, 2021) *with Cahlin*, 936 F2d 1151.

inaccurate under the FCRA.  Absent a plausible allegation of actual falsity or materially misleading reporting, the Court must GRANT Defendant's Motion.[7] *See Abeyta*, 2016 WL 1298109 at *2.

### C.     Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiff may be able to plead additional facts to support her FCRA claims.  Accordingly, the Court will grant Plaintiff leave to file an amended complaint. Plaintiff shall file her amended complaint within fourteen (14) days of the date of this Order.

///

///

///

///

///

///

///

///

---

[7] Defendant asks the Court to take judicial notice of the Automated Credit Dispute Verification, attached to the instant Motion as Exhibit A. (Mot. Dismiss 4:10–11); (Automated Credit Dispute Verification, Ex. A to Mot. Dismiss, ECF No. 18-1).  Because the Court GRANTS Defendant's Motion without relying on Defendant's Exhibit, the Court does not address whether judicial notice of Defendant's Exhibit is appropriate.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 18), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have fourteen (14) days from the date of this Order to file an amended complaint. Failure to file an amended complaint by the required date shall result in the Court dismissing Plaintiff's claims with prejudice.

**DATED** this __2__ day of March, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT